# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **EDWARD BREDE** | : | |
| 1441 West 110th St. | : | |
| Cleveland, Ohio 44060 | : | |
| | : | |
| Plaintiff, | : | CASE NO. 1:19-cv-2130 |
| | : | |
| v. | : | JUDGE |
| | : | |
| | : | MAGISTRATE JUDGE |
| **APPLE COMPUTER INC.** | : | |
| 4400 Easton Commons Way Suite 125 | : | **Jury Demand Endorsed Hereon** |
| Columbus, OH 43219 | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

NOW COMES Plaintiff Edward Brede ("Plaintiff") and proffers this Complaint for damages against Defendant Apple Inc. ("Defendant").

## THE PARTIES

1. Plaintiff is a natural person residing in Cuyahoga County, Ohio.

2. Defendant is a foreign Corporation doing business in the Northern District of Ohio.

3. Plaintiff is an "eligible employee" as defined by the Family Medical Leave Act, 29 U.S.C. § 2611(2).

4. Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A). Defendant was engaged in commerce or an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar workweeks at all times during Plaintiff's employment.

## JURISDICTION AND VENUE

5. All counts contained herein are brought pursuant to the laws of the United States, therefore this Court has jurisdiction pursuant to 28 U.S.C. §1331.

6. Venue is proper pursuant to 28 U.S.C. §1391, due to the fact that Plaintiff performed his job duties in Cuyahoga County, Ohio, at which all of the events in question took place.

## FACTUAL BACKGROUND

7. Plaintiff was hired by Defendant in or around September 2008 as a part-time Specialist (Sales). Three months later, Defendant promoted Plaintiff to a full-time member of the Genius Team. Plaintiff worked as a Genius at the Crocker Park location at the time of his termination on or about August 23, 2019.

8. Plaintiff's position as Genius was the highest-tier technician position available at Apple.

9. Plaintiff's job duties included handling customer appointments, troubleshooting Apple products, repairing software and hardware, and educating customers on how to use products.

10. In or around July 2018, Plaintiff requested intermittent leave under the Family and Medical Leave Act (FMLA) to be a caretaker for his terminally ill sister.

11. Plaintiff used approximately one day of FMLA leave every two weeks.

12. On or about May 5, 2019, Defendant denied Plaintiff a promotion.

13. Defendant informed Plaintiff that his inability to come to work contributed to its decision not to promote him.

14. Plaintiff emailed Defendant to confirm its reasoning. Plaintiff specifically cited FMLA leave as the reason for denying his promotion, and Defendant did not respond.

15. On or about June 13, 2019, Plaintiff received a negative rating in a monthly performance review. Defendant's Development Manager, Jenine Sampson-Ramey stated that Plaintiff's "spotty attendance" factored into his negative rating.

16. On or about July 25, 2019, Plaintiff renewed his intermittent FMLA leave.

17. On or about July 30, 2019, Defendant reprimanded Plaintiff for allegedly violating company policy.

18. On July 30, 2019, customer Alex Kline came to the Genius Bar with an unresponsive laptop. Mr. Kline was a graduate student, and he was extremely concerned about recovering his research which was stored on the laptop.

19. Plaintiff developed a plan to extract Mr. Kline's data from the laptop, and it required a USB drive. Mr. Kline did not have one with him when he arrived for his appointment.

20. Mr. Kline used his smart phone to locate an Office Max to purchase a USB drive for the data extraction process.

21. Mr. Kline asked Plaintiff to keep his laptop hard drive while he went to Office Max to buy the USB drive. Plaintiff agreed to do so. Mr. Kline then briefly left the store.

22. When Mr. Kline left, Defendant told Plaintiff he had to go on break.

23. Plaintiff took Mr. Kline's laptop hard drive with him upon exiting the sales floor rather than leaving it in an open, public space, unattended.

24. Defendant saw that Plaintiff had a laptop hard drive and immediately interrogated him about why he had it.

25. Plaintiff explained the situation, but Defendant reprimanded him anyway.

26. Mr. Kline returned within ten minutes and praised Plaintiff. Plaintiff was able to assist Mr. Kline in a highly satisfactory manner, and Mr. Kline gave Plaintiff a great review for his service.

27. Defendant terminated Plaintiff for this incident on or about August 23, 2019.

28. Defendant claimed that Plaintiff breached company policy in his actions taking Mr. Kline's laptop hard drive while Mr. Kline was not in the store.

29. Plaintiff had Mr. Kline's consent at all relevant times and never left the store- he merely took the hard drive into the break room with him while he waited to Mr. Kline to return.

30. Plaintiff was specifically instructed to go on break, despite Defendant knowing that he had Mr. Kline's hard drive at that time.

31. Plaintiff reviewed the policies that Defendant said he violated and emailed Defendant to inquire which one was applicable to this specific incident. Defendant failed to show Plaintiff, in writing, which policy he violated.

32. Defendant retaliated against Plaintiff and interfered with Plaintiff's rights to FMLA leave because Defendant terminated him five days after he renewed FMLA leave.

33. Plaintiff was not able to utilize the remainder of his FMLA leave because of his termination.

34. Defendant cannot articulate a legitimate, non-discriminatory reason for Plaintiff's termination.

35. The reasons offered for Plaintiff's termination, are pretextual and should not have actually motivated Plaintiff's termination when he had no significant prior disciplinary action.

## COUNT I
### Interference - Violation of the Family Medical Leave Act

36. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

37. Plaintiff was eligible for FMLA leave and requested leave from Defendant, an eligible employer.

38. Plaintiff was entitled to FMLA leave, as his sister suffers from a serious medical condition, and he was her caretaker.

39. Defendant was notified that Plaintiff's family member suffered from a serious medical condition that qualified Plaintiff for FMLA leave because he reapplied for FMLA leave on July 25, 2019.

40. Defendant interfered with Plaintiff's FMLA rights by terminating his employment five days after renewing leave.

41. Plaintiff's termination was causally connected to his use of FMLA leave.

42. Defendant lacked good faith and/or reasonable grounds to believe it had not violated the FMLA in its discharge of Plaintiff.

43. Defendant's violations of the Family and Medical Leave Act entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

## COUNT II
### Retaliation/Discrimination- Violation of the Family Medical Leave Act

44. Plaintiff reasserts and reincorporates each and every allegation contained in the paragraphs above as if fully rewritten here.

45. Plaintiff engaged in protected activity, as he applied for intermittent FMLA leave in 2019. Defendant was clearly aware that Plaintiff engaged in protected activity, as it approved his FMLA leave application.

46. Plaintiff suffered an adverse employment action when Defendant terminated him very shortly after he renewed FMLA leave.

47. Defendant cited Plaintiff's FMLA absences in performance reviews and its reason for denying Plaintiff a promotion.

48. Defendant terminated Plaintiff, at least in part, because he utilized FMLA leave.

49. Defendant lacked good faith and/or reasonable grounds to believe it had not violated the FMLA in its discharge of Plaintiff.

50. Defendant's violations of the Family and Medical Leave Act entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ *Rachel A. Sabo*

Rachel A. Sabo (0089226)
Peter G. Friedmann (0089293)
**The Friedmann Firm LLC**
1457 S. High Street

6

        Columbus, OH 43207
        614-610-9757 (Phone)
        614-737-9812 (Fax)
        Rachel@thefriedmannfirm.com
        Pete@thefriedmannfirm.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

        /s/ *Rachel A. Sabo*
        _____
        Rachel A. Sabo (0089226)